Morning.Morning. Before we begin with the first matter, which is Iannuzzi versus Ostré or Ostré, I'm not sure how it's pronounced, I want to just take a second and acknowledge the participation and presence of and also thank very much a very distinguished colleague from the District Court of New Jersey, Justice Arenas. I had the pleasure of sitting with him, I guess six or seven months ago, was it? And I'm delighted to have that opportunity again. So we thank you for your help with these cases and your intellect and your time. Thank you very much. Counsel, ready to proceed? Mr. Axson? Yes, thank you. David Axson, on behalf of the appellant, Mr. Stephen Iannuzzi in this matter, if I may, I would reserve two minutes for rebuttal. All right. This case, Your Honor, is an appeal from a decision of the Social Security Administration. The Administrative Law Judge found that the claimant could work at the medium level with some postural limitations and concluded that he could perform two of his past relevant jobs, that of a commercial accounts manager or that of a finance and insurance manager. But there's an alternative holding here too, isn't there? And to what extent should we address the opinion but found that he could do light or sedentary work and the prior work was in one case light and the other sedentary. Now that finding essentially ignores all of the non-exertional limitations that the claimant has. Maybe that answers my question. My concern was, it seems to me from our view of the record, all of the doctors agree with one possible exception. Dr. Denmore, but even I think she agreed with some limitation. He could work as long as any lifting involved less than 20 pounds and I think they said that he could perform sedentary light work also. Now given that, how could we conclude that he is disabled unless there's an issue about getting to the alternative holding? And that's why I asked you my question. The exertional limitations in terms of... Can we increase the volume? Sorry. Sorry to interrupt you. I'm going to get him to increase the volume a little bit. Thank you. Go ahead. The exertional limitations really only tell part of the story here. The claimant testified actually that the reason that he was unable to do the past job of a finance or insurance manager, which was a sedentary type of job, was that the side effects of his mind was foggy and that he didn't feel that he would have the focus to perform that work, which he described as involving sums of money, obviously a mistake in getting the right insurance or financing on a client's car would cost his employer a lot of money. There was no evidence with respect, medical testimony with respect to pain? There was considerable testimony and also all of the reports, particularly the ones that... Before you answer that, before you go on, as I read it, the testimony consisted of a pretty long course of treatment for pain. And I interpret, and you correct me if I'm wrong, I interpret the ALJ's problem was that he or she, I think it was he, was searching for some objective finding. In fact, he said, or she said, that the... Oh, you're arguing, I guess, the ALJ rejected Dr. Denmark's conclusion because it wasn't supported by objective findings. But for something like pain, do you need to have some objective medically-based finding? The standard that this circuit has adopted, which is in the Ferguson case that I cite, says two things. First, that you do not need to have objective evidence. The ALJ has to at least consider the testimony, even if it's not supported by medical evidence. And secondly, that if it is supported by, and I don't believe that the decisions use the word objective, but if a claimant's testimony is supported by the medical evidence, then the judge is required to accept it unless there's some other evidence which the judge has properly credited that would provide it. Okay. Now, can you answer Judge Siegel's question with that in mind? Well, the medical evidence which the district court uses to make its alternative finding, basically the court relied on Dr. Dunmore's report and Dr. Reinhardt's report. Dr. Dunmore is a consulted examiner. Dr. Reinhardt is a primary care physician. However, the district court accepted only part of those opinions. The district court looked at just the exertional limitations that those physicians found, but doesn't consider the fact that both those physicians discuss and credit the existence of headaches, the problem with pain, and his course of treatment, all which produced the non-exertional limitations. Now, what the district court essentially did, although I don't think it was described in that way, is say that, well, we found there's error in the LJ opinion because we don't think the findings are supported by substantial evidence, but that error is harmless. Counsel, let's go back to your statement that the medicines were having an effect on him. He was on some pretty powerful medications, and you said that those medications created non-exertional limitations on his ability to do even a sedentary job, like a credit manager, which is, I think, what he really was, a credit analyst or manager. Is there any medical, this is sort of a follow-up on Judge Stapleton's question, is there any medical testimony from any doctor that said, well, we don't look at whether he can lift 10 pounds or not, or we don't look at whether he can sit or stand for so many hours. Rather, his mind is foggy, and he was taking some pretty potent stuff. That impressed me, at least on the pain front, that these doctors were prescribing some very potent kinds of pain meds. Yeah, and very stately controlled. Very, you know, I mean, there was certain kinds of injections they were giving him. They gave him Percocet, which is a street drug. I mean, it's a pretty powerful thing. Vicodin, another very powerful drug. But go back to the thing. Is there any testimony in the record concerning non-exertional limitations that flow from the medications themselves? Dr. Dunmore discusses that. I don't think she says with as much precision as I might like, but in her report, she mentions that the problem of concentration is affecting his, was affecting his ability to perform his work. Dr. Reinhart also... Even she, though, doesn't say that he would be totally disabled. She places some limitations on what he can do, but they are exertional limitations. Dr. Reinhart finds him markedly impaired in terms of activities of daily living and social functioning. But Dr. Reinhart, even his own patient doesn't say he is disabled, that he can't perform. Actually, I think Reinhart would say he could do with some exertional limitations. Less than 25 pounds, standing walking more than four hours. His testimony seems to be consistent with the LJ's finding of the medium level of disability. Dr. Reinhart's limiting the less than full-time ability to work. He said, I think, four hours out of an eight-hour day. Obviously, the jobs that we're talking about are all full-time jobs. He said standing or walking no more than four hours total per day. He didn't say he couldn't work any more than four hours a day. He couldn't stand or walk in excess of four hours a day, combined with the limitation he put on the lifting, which for a credit manager or a credit analyst is probably doable. I mean, I think a good hunk of your time is probably sitting down. I mean, in an eight-hour day, that doesn't seem unreasonable to be limited to four hours for that kind of a job, at least. Yeah, I think if it were purely for an unskilled type of sedentary job, then I might agree. However, the best work is described as skilled work. You have to look at his ability to think, to concentrate, the headaches, and the ability to sustain that level of mental activity over the period of time. Let me stop you there. What do you understand the ALJ and the district court said, if anything, about pain and the pain? Was it addressed at all? I have some difficulty understanding what the ALJ did with that argument. The administrative law judge discusses his testimony in terms of pain. The judge rejected it, and the only medical evidence which the administrative law judge cites in rejecting the testimony is a statement from one of the physical therapy reports. And I discussed that in my brief, putting aside the question of what weight you give a physical therapist, that physical therapist himself finds the subject of complaints to be credible. So I don't think that the administrative law judge has properly looked at any medical evidence and said, well, he doesn't have these problems with pain, headaches, and so on, and has pointed to any medical evidence that would rebut that. What do you make of the ALJ's finding on credibility? There was one point in there, particularly when he was talking about, when the plaintiff was talking about what he's able to do during the day, and the ALJ was reviewing that, he expressed basically a disbelief in what he was hearing. He really challenged the credibility of the plaintiff. He implied that, more than implied, he really said that the plaintiff was overblowing the limitations. What do you make of that? What basis in the record was there for a finding that the plaintiff was, or is there a basis in the record for disbelieving the plaintiff when he testifies as to what he can or cannot do during the day? And in fact, one could argue that the ALJ almost misstated his testimony at the end. The administrative law judge's opinion talks about that, actually acknowledges that he has medical conditions that would likely produce the symptoms that he's describing, which is part of the standard that this Court has adopted in the Ferguson case, but then goes on to say that the statements about his, or the degree of intensity of the pain, the degree of impairment from that pain, he didn't believe. And it's that second part that I believe is not based in any of medical reports or opinions. The judge doesn't point to anything, as I said, other than that one statement in a physical therapist's report. And the ALJ opinion really doesn't explain why that one statement is some evidence that the plaintiff is faking or exaggerating his symptoms. The physical therapist, in fact, doesn't reach that conclusion. And obviously, he has had, as the Court's noted, very aggressive treatment. He had injections and gave him some relief up until the point where he had some heart problems, and they said he couldn't continue with the steroid injections. Well, by his testimony, the relief lasted about three days most times, two days, three days. That's by his testimony. Yes. It wasn't perfect relief, but it was something. And he's been to a pain clinic, which are the physicians that specialize in pain. And as the Court's noted, he's getting aggressive treatment with narcotic medication, something that they don't hopefully give out to anyone without a reason. There is objective evidence, actually, although I don't think it's required under the case law, that there are MRIs showing that he has degenerative spinal changes. Well, degenerative spinal disease, my guess is that 45% if not 100% of everybody in this courtroom over the age of 40 has the same. I know I do. I always speak for my colleagues. A lot of bad backs up here on the bench. But I'm not sure that would give the fact. I mean, it's a very intimidating sounding diagnosis, but that's kind of what evolution, that's the hand evolutionist deltas, and we get... We look at what the physicians do. Pardon me? I'll use myself as an example. I have some problems, but I don't require that kind of treatment. The physicians that are treating the appellant in this case said that he has problems. Dr. Burke, surgeon, and Dr. Lee's reports are in the record. Discuss it, talk about the headaches, consider possibilities of surgery, and Dr. Burke and his report referred him back to the pain clinic to see what they can do. Dr. Lee's neurologist also looked at him. Mr. Axne, I believe you reserved some time, so let's hear from Mr. Ormson, by the way. Will you see him? Maybe come to the podium. I want to make sure. Can he see him? Can you hear him? Hopefully, yeah. Let us know if you can't hear Mr. Ormson. Mr. Axne, let us know. Mr. Axne? All right. Okay. Good morning, Your Honors. May it please the Court. My name is Craig Ormson, and I represent the Commissioner of Social Security in this case. Judge McKee, I think you issue in this case, and that's that alternative finding. Whether substantial evidence supports the ALJ's determination that plaintiff could perform his past relevant work at the light exertional level, as an automobile sales representative, at the sedentary level. Can we look at it under W.R. Grace? Can we look at the alternative finding here? Don't we have to look at the, the District Court found an alternative ground for supporting it, but don't we have to look at the ALJ's finding? We do have to look at the ALJ's finding, and I think it's a mischaracterization to say that the District Court found that. The ALJ, in his decision, identified medium work, and according to our regulations, medium work includes light and sedentary, and then in the, in the next, on the next page, and I believe it's page 18 of the transcript, the ALJ identifies the, the jobs and, and the requirements of those jobs, and then he makes that finding. What do we do? Let me go back to something Judge Stapleton asked Mr. Axne. What do we do with the ALJ-treated pain? It seems to me there's a total dismissal of the complainants' complaints about pain, and clearly, I mean, these doctors either firmly believe that this guy's in severe pain, or they're committing some pretty serious offenses under our controlled substance act. You can't just disperse a course of Percocet like this unless there's some finding that this guy has the kind of pain that warrants that kind of narcotic intervention. The ALJ didn't even consider that, did it? No, quite the opposite, Your Honor. The ALJ did consider that. The ALJ looked at plaintiff's symptoms in relation to the objective medical evidence. For example, plaintiff's... That's my concern, and when you say objective medical evidence, we've said objective, substantial complaints of pain in and of themselves can give rise to belief, and you have to be very careful about requiring subjective, objective medical evidence for something that it doesn't necessarily follow. Somebody can be in severe pain and have a totally normal MRI, totally normal X-ray. The gait may not be normal, but that might be pushing it, and there's some evidence here that his gait was normal on at least one visit to the doctor. But if the ALJ is looking for something in the medical record, some physical manifestation of some underlying pathology that would give rise to this kind of pain, he's not necessarily going to find it, is he? Why would he just not rely upon the treating physician? Well, in this case, Your Honor, while it is a correct statement of law that in ALJ that some subjective complaints may not be proven with objective medical evidence, this Court has held recently in Johnson v. Commissioner that objective medical evidence can disprove a claimant's subjective complaints. In other words, there could be medical evidence in the record that would refute what the claim... Where is that evidence here? For example, plaintiff identified that he was in disabling neck and back pain and that he had difficulty standing. So the ALJ, I believe it's on page 17, identified all the treatment notes which show normal strength, normal neurological function, a normal gait, normal range of motion in the back, normal range of motion in the neck on most occasions, and then on several occasions there was slightly reduced range of motion. The ALJ looked at the cardiac symptoms. In February 2006, Dr. Dunmore stated that plaintiff reported no complaints of any chest or heart cardiac symptoms. That led Dr. Dunmore to the conclusion that there were no cardiac symptoms at this time. Didn't Dr. Dunmore on February 6 also conclude there was severe pain needing narcotic medications, chronic pain syndrome, coronary artery disease, and diabetes? Yes, Dr. Dunmore did conclude that, but as you had posed the question, Dr. Dunmore herself, fully aware of that, still found that plaintiff could perform sedentary work. If that's the case, what about the impact on your ability to think and focus? Percocet is the kind of drug that, in fact, I think doctors usually tell you to take it at night if you can because... Don't operate heavy machinery. They always say, don't operate heavy machinery. Yes. And in this case, given the jobs, there was no heavy machinery. But looking at this, the Third Circuit has clearly held in Burns, and I don't have a full site right now, but that drowsiness often accompanies the taking of medication. And that drowsiness is not per se disabling unless there is evidence of record to support that drowsiness. Now, Dr. Dunmore specifically identified the narcotic medication and still concluded that plaintiff could perform sedentary work. Dr. Reinhart, his own primary care physician, fully aware of plaintiff's prescription medications, also concludes that he could perform a potentially light medium work. So this is evidence which is showing that these doctors are fully aware of the medications and that these medications are not disabling. And according to Third Circuit precedent, if plaintiff wants to suggest that that drowsiness is disabling, plaintiff has to prove more than his hearing testimony. And not only has he not identified any evidence to support that, all of the evidence of record directly contradicts that. All right. Help me. Can you point me specifically? You were referring to evidence in the record, and I want to zero in on what the ALJ found. Where did the ALJ deal with the claim that this gentleman was disabled by virtue of pain and the treatment thereof? Where did he address that, and what did he rely on in rejecting it? I believe it's on page 17, Your Honor. At the top of that page, the ALJ identified plaintiff's objective complaints, and then he agreed that there was a medically determinable impairment that could cause some of those symptoms. But then from that page and also on the next page, the ALJ was identifying the treatment notes from Dr. Lee, Dr. Batnaget, and other physicians, and looking at those objective clinical findings, which I mentioned earlier. And so in that sense, the ALJ identified his subjective complaints and then compared those subjective complaints with the evidence of record. And that was fully supported by the physicians, Dr. Dunmore, Dr. Carr, the state agency physician, and Dr. Reinhart. And moreover, I would actually point out that not only did the ALJ, while the ALJ found it not fully credible, the ALJ actually, in his RFC assessment, put work-related limitations that exceeded some of the physicians. For example, the ALJ limited plaintiff to a sit-stand option if he was limited to sedentary work. Now, Dr. Reinhart never suggested that a sit-stand option was necessary. In fact, he said that he could do four hours. Dr. Dunmore didn't identify a sit-stand option. So I think that that sit-stand option is suggestive that the ALJ did seriously consider, that the ALJ considered it within the objective medical evidence, but that there were circumstances where the ALJ then accepted those subjective complaints and considered it. What should we do? It looks as though there's an error made in the ALJ's reference. The way he handled the treating physician's opinion, because the ALJ concluded the opinion was given before a stent operation, where in fact it was the opinion he was referring to, the doctor's report, was dated one year after that procedure. Should we at all be concerned about the fact that the ALJ just may have discounted a report because he believes it was irrelevant, when in fact it wasn't irrelevant? I know, Your Honor, and that's for two reasons. First off, I think it's a mischaracterization. When the ALJ was looking at that opinion, he wasn't saying that the medical opinion was one year later. What he was doing was looking at that medical opinion in relation to the subsequent medical evidence. So the ALJ wasn't saying that that opinion was delivered in October of 2005. What he was doing was he was looking at the opinion that was given and looking at those subsequent treatment notes. As I mentioned earlier, there was that Dr. Dunmore, in February of 2006, identified no chest pain, and that led Dr. Dunmore to the conclusion that there were no heart symptoms at that time. So the ALJ wasn't necessarily looking at the opinion or believing that the opinion was incorrectly dated. The ALJ was actually just reviewing it in relation to the subsequent medical evidence. The second reason is that, as the ALJ noted and as the district court noted, that even if you gave this opinion full weight, it still is consistent with the two relevant jobs. So I think on that level, I don't think that the ALJ mischaracterized the opinion, and even if there was any mischaracterization, it still would be consistent with that finding, that alternative finding, that he could perform his past relevant work. Counsel, it seems clear to me, I don't know why everybody agrees, that this ALJ disbelieved, to a fairly significant degree, the statements of the plaintiff as to how intense his pain or how intense his symptoms were. Did you agree with that, the ALJ? No. Well, I think you found him not. Well, let me refer you specifically to page 17 of the administrative record, which is page 5 of the ALJ's opinion. It's the first, second full paragraph on the page. It says, after considering the evidence of record, the undersigned finds of the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. But then he goes on to say, based not on a doctor's report, but on a physical therapist's statement, he goes on to say that something called an SCM insertional pain at the mastoid processes bilaterally. A patient's report of pain upon such palpitation is generally regarded as a sign that patient has extreme sensitivity or is falsely reporting. Well, those two paragraphs are right in a row, and this is a pretty short opinion. I mean, it's not like it's buried in a 30-page opinion. It's only seven pages. It seems clear to me. Maybe I don't know what it might be. Well, it's clear to me that he basically disbelieved the testimony as to what his, well, I'll use his own words, the intensity, persistence, and limiting effects, those three things, intensity, persistence, and limiting effects of these symptoms are not entirely credible. And there's nothing to suggest that this is somebody with a particularly low threshold to pain. In fact, the MRI confirmed severe cervical spine problems. That's very different than degenerative disc disease. That is something I would imagine that could be pretty compromising, and that would justify the kind of meds this guy was on. Well, Your Honor, to address both questions, I don't think that the ALJ, the ALJ did disbelieve that plaintiff alleged disabling pain, and that at the hearing, plaintiff alleged that his symptoms were, prevented him from working. And so, therefore, when the ALJ made that statement, he was identifying that it's not entirely credible that the intensity of being disabling pain was fully credible. The ALJ then looked at the medical evidence, and as I mentioned before, he looked at all those clinical findings, which seemed to disprove the level of pain. Moreover, as I mentioned earlier, in the RFC assessment, he identified that sedentary, that sit-stand option. Now, as I mentioned, that limitation exceeded what every medical opinion in the record stated. So by exceeding what every medical opinion stated, it does not show that the ALJ was simply ignoring his subjective complaint. Is there a single doctor who thought he was exaggerating? Is there any doctor here who had, you know, all been identified, his own doctor, Dunmore, any of them said, you know, I feel that based on the objective things, this person is exaggerating his, the words, persistence, intensity, and limiting effects. I don't recall that. Maybe I missed it. No, you're correct, Your Honor. No doctor says that Mr. Iannuzzi was malingering. But all of the doctors fully aware of his symptoms identified that that pain was not disabling. And that's the same conclusion that the ALJ reached. Well, you know, when a doctor says not disabling, that's not a legal use of the term. Well, that's true. And I guess I wasn't, I was somewhat short-cutting in that Dr. Dunmore identified the plaintiff could perform the range of sedentary work, that Dr. Reinhart could perform a range of light-medium work. And those were the medical opinions. And those opinions that if they believed that plaintiff couldn't stand it for four hours, then Dr. Reinhart was totally capable of identifying what he believed the limitation was. That limitation was what Dr. Reinhart believed that plaintiff could do. And that limitation, excuse me, that limitation did not preclude plaintiff from, Mr. Iannuzzi from performing his past relevant work. You said, when you said, you said the ALJ found that the claimant was not entirely credible and then went on to cite the clinical evidence. Are you referring to some clinical evidence other than the physical therapist's observation that was read earlier? Absolutely, Your Honor. In the decision, the ALJ cites Dr. Lee's notes where there was no neurological deficits that the, that her clinical findings were unremarkable. The ALJ cited neurological deficits. We're talking about pain here. Well, that's true. And treatment thereof. Yes. And so the, well, the ALJ was looking at those clinical findings to see whether the pain that was alleged was disabling. But nonetheless, the ALJ also then considered those medical opinions, the same medical opinions who were fully aware of Mr. Iannuzzi's medications and his subjective complaints. Dr. Dunmore herself specifically stated that plaintiff wasn't, presented a lot of subjective complaints. Dr. Dunmore still identified that plaintiff could perform a sedentary work, which was completely consistent with the ALJ's alternative finding. I see that my time is up. May I briefly conclude, Your Honors? Go ahead. We'd let your colleague go a little bit over. But when you say briefly, it's fine. It was simply one or two statements. Okay. You mean one or two sentences or one or two statements? Yes. Well. A statement can go on all day. I will do one or two sentences then, Your Honor. That this case, and maybe I'll have a lot of them. Just don't throw in semicolons. But in this case, the ALJ's determination that plaintiff could perform his past relevant work was supported by substantial evidence. And this was consistent with all of the treating, all of the physicians of record. And therefore, the commissioner respectfully requests that the court affirm his decision that plaintiff's impairments were not disabled. Thank you, Your Honor. Okay. Mr. Axson? Thank you. Just briefly, in terms of the medical evidence which counsel has cited, if we look at the ALJ's opinion, he lists all the different treating sources, Dr. Burke, Dr. Lee, and so on. He gives reasons why he didn't believe or accept their conclusions. And if the district court finds that the judge is wrong in rejecting all that medical evidence, then not only do we have to look at what those doctors say, we have to consider how those, the objection of that testimony colored ALJ's credibility findings. And I would submit that you can't separate his credibility findings and his rejection of the medical evidence. If the ALJ credited all or some of the medical evidence, he very likely would have, and I think under the case law probably is required to, accept the testimony, the credibility of the plaintiff to the extent that it's consistent with the medical problems that he's found to have. What about Mr. Ormson's argument that all the physicians here agreed that your client could do some form of sedentary work, restricted sedentary work? Well, I would say, first, I don't believe that all the doctors agree on that. As the court pointed out, it's not really their call. What doctor would disagree with that based upon their testimony? Who would you submit would disagree with that? I think Dr. Reinhart and Dr. Johnson have talked about limits in his ability to sustain work activity. So he could do it, but not necessarily as a full-time job. And could lift up to less than 25 pounds as Dr. Reinhart, standing and walking no more than four hours. I assume that's a day. The other question, of course, is his ability to do his past work at the sedentary level requires that he's forming skilled work, which has greater demands on the mental abilities. He's over, at least as of the date of the decision, over age 50. So if we get past in the sequential evaluation of the evidence, if we get past his ability to do his past work, then the question is, are there other unskilled sedentary or light jobs that he can do? Under the grid regulations, at least at age 50, it doesn't matter if he could do an unskilled sedentary work, because the regulations direct defining of disability for those individuals. So that's a conclusion of law, not really a medical fact, but it flows from the medical evidence. Thank you. Anything else? No, I'm content. Thank you very much, gentlemen, both of you, for a very helpful argument. We'll take the matter under advisement. Mr. Armisen, are you from the Western District? Are you from Washington? I haven't seen you before. Oh, we're in the Philadelphia area. We're about four blocks from here. The level, unfortunately, for social security cases is not always as good as it was in this case on both sides, and I commend you both for it. An excellent job. Thank you.